IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**LATERRENCE A. LENOIR**                                      **PETITIONER**

**V.**                                                 **CIVIL ACTION NO. 5:18CV52 DCB-LGI**

**WARDEN ANDREW MILLS**                                  **RESPONDENT**

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Laterrence Lenoir seeks federal habeas relief under 28 U.S.C. § 2254. After a review of the entire record and all the applicable law, the undersigned recommends that his petition be dismissed with prejudice.

**Factual and Procedural Background**

In 2016, Lenoir was convicted in the Circuit Court of Lincoln County, Mississippi, of two counts of armed robbery and one count of conspiracy to commit armed robbery. He was sentenced to a 25-year term, with five years suspended and five years of post-release supervision on the robbery counts, and a five-year term on the conspiracy count. All sentences were ordered to run concurrently in the custody of the Mississippi Department of Corrections. The relevant facts are accurately described in the state court's opinion as follows:[1]

> Surveillance video[2] showed that, on the evening of September 7, 2013, a man approached the front door of the Dollar General in

---

[1] The headings have been omitted.

[2] https://courts.ms.gov/Newsite2/appellatecourts/sc/oawebcasts.php?vid=D6AOxI7FyB4

Brookhaven, Mississippi. He looked inside and then walked away. The man soon returned with a second man wearing a mask. After the two men entered the store, the first man pulled a mask over his face too. The first man was carrying a pistol. And the second man was carrying a sack.

There were two employees in the store that night, Shanti Freeman Nettles and Kaitlynn Calcotte. Their manager, Jessica Odom,[3] had instructed Nettles to open the safe early, so she and Calcotte could go home. When the two robbers showed up, Nettles was in the office counting the money in the safe. Calcotte was at the register. When she saw the two masked men, she went into the office with Nettles.

The video showed the two men follow Calcotte to the office. The first man pointed his pistol at them, and Nettles and Calcotte handed over their personal money and their cell phones. Then, at the direction of the second man, they handed over the money from the safe.

After the robbers left, Nettles and Calcotte called 911. Captain Byron Catchings with the Lincoln County Sheriff's Department was tasked with investigating the robbery. During his investigation, Lenoir had surfaced as a person of interest. So Catchings began surveilling him. Based on his personal observations of Lenoir, Catchings concluded Lenoir was the first man in the video. Lenoir was charged with two counts of armed robbery and one count of conspiracy to commit armed robbery.

At trial, Catchings testified about his investigation and his identification of Lenoir as the first man in the video, which was played for the jury. The State also called two other witnesses familiar with Lenoir—Willie Butler and Greta Mathis. Willie Butler's niece had dated Lenoir. At the time of trial, Butler testified he had known Lenoir for "possibly two years." Butler testified he recognized Lenoir as the man in the video based on "his body and his walk." He also testified he had seen Lenoir's face at the beginning of the surveillance video. Greta Mathis, like Butler, was related to Lenoir's girlfriend. She testified she also recognized Lenoir as the man in the video "just [by] the way he walk[ed]."

---

[3] The record reflects that Jessica Odom was not the manager of the Brookhaven location, but the assistant manager at the Dollar General location in Wesson, Mississippi, which was the location of the robbery in *Lenoir v. State*, 224 So. 3d 85 (Miss. 2017). Odom testified that on the night of the robbery, the Brookhaven manager requested that she travel to that location to make a copy of the surveillance video for police.

      The State called a third witness familiar with Lenoir—Jeffery Thomas. Thomas went to church with Lenoir. Before trial, Thomas had given a statement identifying Lenoir as the man in the video. But at trial, he said he had given this statement under pressure. Thomas testified he did not know who it was in the video because it was too blurry to make an identification. Odom, the Dollar General manager, testified on behalf of Lenoir. She said she had watched the surveillance video, and the man in the video was not Lenoir. Lenoir himself testified, denying any involvement in the robbery.

      At the close of trial, the jury found Lenoir guilty of all three counts.

*Lenoir v. State*, 222 So. 3d 273, 275–76 (Miss. 2017)

      Aggrieved, he appealed and asserted the following errors: "(1) The trial court erred in admitting the nonspecific, nonsubstantive identification of Lenoir by Butler and Mathis based solely on the purported way Lenoir walked; and, "(2) Lenoir's convictions are against the overwhelming weight of the evidence." *Id.* at 276.  The Mississippi Supreme Court affirmed the conviction and sentence on May 18, 2017.

      Lenoir now brings the instant petition and asserts as grounds for relief the same issues that were considered and rejected on direct appeal:

    Ground One:  Lack of actual, positive identification of the perpetrator by Butler and Mathis.

    Ground Two:  Insufficient evidence.

## Discussion

      This Court's review of Petitioner's claims for federal habeas relief is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996.  Under the Act, this Court cannot grant a petitioner federal habeas corpus relief for any claim that was adjudicated on the merits in a state court proceeding, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under 28 U.S.C. § 2254(d)(1), this Court reviews questions of law as well as mixed questions of law and fact, while questions of fact are reviewed under 28 U.S.C. § 2254(d)(2).

Under the first prong, the clauses "contrary to" and "unreasonable application of" are independent bases for granting federal habeas relief. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court's decision is "contrary to" federal law if it contradicts Supreme Court precedent or reaches a different result on materially indistinguishable facts. *Id*. Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court "correctly identifies the governing legal principle" but then "unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685 694 (2002). The state court's decision must be objectively unreasonable, not merely erroneous or incorrect. *Wood v. Allen*, 558 U.S. 290, 301 (2010).

AEDPA's second prong requires that federal courts defer to a state court's factual determinations unless they are based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Morales v. Thaler*, 714 F.3d 295, 301 (5th Cir. 2013). Deference is critical because federal courts have no authority to grant habeas corpus relief simply because "we conclude, in our independent judgment, that a state supreme court's application of

4

[federal] law is erroneous or incorrect." *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002); *Jasper v. Thaler*, 466 F. App'x 429, 435 (5th Cir. 2012). Thus, we presume the state court's determination of a factual issue is correct, unless a petitioner rebuts the presumption with clear and convincing evidence. *See* 28 U.S. C. § 2254 (e)(1).

## Ground One: Identification Evidence

In ground one, Lenoir contends that he is entitled to habeas relief because the prosecution's witnesses failed to provide an "actual, positive identification" of him on the surveillance video. As noted above, however, Lenoir was positively identified by Willie Butler, Greta Mathis, and Investigator Catchings, all of whom testified that they recognized Lenoir as the unmasked perpetrator based on their previous encounters with him. As Respondent points out, Lenoir's argument in ground one appears to parrot the dissenting opinion on direct appeal—that the lay identification testimony of these witnesses, while admissible, could not be substantiated based on the quality of the video:

> Actual, positive identification of the perpetrator in this case does not exist. Instead, the prosecution's case rested entirely on lay opinions that the person's clothes and walk were similar to those of the defendant, even though neither contained any discernable characteristic. We have the duty to review the evidence to be sure a reasonable juror could find it is capable of supporting a conviction beyond a reasonable doubt. Here, one could not.
>
> The surveillance video of this robbery is so pixilated that no reasonable juror—or witness for that matter—could positively identify the defendant from the video alone. During the two seconds the robber's face is exposed, his face appears to be nothing more than a blur with no distinguishable characteristics. One cannot even determine the nose from the mouth. And during the rest of the video, both men are wearing masks. No one—no matter how familiar with Lenoir—could identify him by facial recognition.
>
> . . . .

> In this case, there are no eyewitnesses. There is no forensic evidence. No fingerprints, DNA, or hair. So, we are left with a conviction based solely on witnesses who looked at a pixilated video and testified that the person in the video had clothes like Lenoir and walked like Lenoir. And both the clothes and the walk were not distinctive in any way. That evidence, in my view, is insufficient for a finding beyond a reasonable doubt of guilt. No reasonable juror could reject the doubt inherent in opinions based on such ambiguous criteria.

*Lenoir*, 222 So.3d at 280.

The Mississippi Supreme Court majority rejected this argument on appeal, finding the evidence was admissible under Rule 701 of the Mississippi Rules of Evidence, and that any prejudice was outweighed by the probative value. Miss. R. Evid. 403. Like its federal counterpart, Miss. R Evid. 701 provides: "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." The court's majority explained as follows:

> On appeal, Lenoir concedes "the law is fairly well settled that lay witnesses can offer opinions concerning the identity of someone on a video." . . . But we find the level of familiarity with Lenoir goes to the *weight* and *credibility* of their opinion testimony, not its admissibility. Rule 701 requires lay opinion testimony to be "rationally based on the perception of the witness." Miss. R. Evid. 701. And both Butler and Mathis testified their opinions were grounded in their observation of how Lenoir walked. Thus, we find no abuse of discretion in the trial court's permitting Butler and Mathis to testify they had viewed the video and, based on their familiarity with how Lenoir walked, were of the opinion the first man in the video was Lenoir. *Cf. id.*
>
> Nor do we find, as Lenoir contends, the probative value of this admissible evidence was outweighed by the danger of unfair

> prejudice. *See* Miss. R. Evid. 403. Undoubtedly, this evidence had probative value, as it went to the key factual issue at trial—whether Lenoir was in fact the first man in the video. And Lenoir's argument for why the evidence is unfairly prejudicial—Butler's and Mathis's bias against him—goes to the weight the jury ought to have given the evidence, not its admissibility.

*Lenoir*, 222 So. 3d at 277–78

It is well-settled that Lenoir cannot rely on a state-law evidentiary violation as the basis for his federal habeas application. *Lucio v. Lumpkin*, 987 F.3d 451, 472 (5th Cir. 2021); *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011). Mississippi appellate courts are "free to police their own evidentiary rules." *Pemberton v. Collins*, 991 F.2d 1218, 1224 (5th Cir. 1993). For purposes of federal review, "[a] state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999). "[A] trial that is unfair, whatever the cause of such unfairness, violates Fourteenth Amendment due process." *Fitzgerald v. Estelle*, 505 F.2d 1334, 1336 (5th Cir. 1974). Only rulings that are "of such magnitude" or "so egregious" rise to this standard, and only evidence that "played a crucial, critical, and highly significant role in the trial" will warrant relief. *Gonzales*, 643 F.3d at 430. "This is a high hurdle, even without AEDPA's added level of deference," and it is one Lenoir fails to meet. *Id.* at 431.

There can be no doubt that the identity of the unmasked man in the surveillance video went to the heart of this case. No forensic or other evidence was recovered at the scene on the night of the robbery. Both suspects wore gloves and the unmasked man put

7

on the mask after he entered the store. Months had also lapsed between the robbery and Lenoir being identified as a person of interest. However, consistent with other state and federal courts considering the issue, the Mississippi Supreme Court concluded that the identification of Lenoir by witnesses, who had a greater familiarity of Lenoir based on their encounters with him, went to the weight and credibility of their testimony which were in the province of the jury to decide.[4] While the surveillance video was not a "model of clarity," it was not 'so unmistakably clear' that no identification testimony was needed nor 'so hopelessly obscured, that [Catchings, Butler, Mathis were] no better-suited than the jury to draw a meaningful conclusion as to the identity of the person depicted." *Lenoir*, 222 So. 3d at 277 (internal quotation marks and citation omitted). *See United States v. Jackman*, 48 F.3d 1, 5 (1st Cir. 1995); *United States v. Wright*, 904 F.2d 403, 405 (8th Cir. 1990) (allowing testimony where "[t]he picture taken of [the defendant] as he removed his mask was not a model of clarity"). As explained by the Fourth Circuit:

> [T]estimony by those who knew defendants over a period of time and in variety of circumstances offers to the jury a perspective it could not acquire in its limited exposure to defendants. Human features develop in the mind's eye over time. These witnesses had interacted with defendants in a way the jury could not, and in natural settings that gave them a greater appreciation of defendants' normal appearance. Thus, their testimony

---

[4] *See United States v. Fulton*, 837 F.3d 281, 299 (3d Cir. 2016); *United States v. Borrelli*, 621 F.2d 1092, 1095 (10th Cir. 1980); *United States v. Farnsworth*, 729 F.2d 1158, 1160 (8th Cir. 1984) ("lay opinion identification testimony is more likely to be admissible, for example, where the surveillance photograph is of poor or grainy quality, or where it shows only a partial view of the subject." *Jackman*, 48 F.3d (affirming the admission of lay opinion identification testimony primarily because the surveillance photos were blurry and only part of the robber's face was visible; *State v. Barnes*, 147 Idaho 587, 212 P.3d 1017, 1025 (Ct. App. 2009) ("This is not a situation where the prosecutor called people 'off the street' to come and render an opinion as to whether the individual depicted in the security videotape was in fact Barnes.")

>provided the jury with the opinion of those whose exposure was not limited to three days in a sterile courtroom setting.

*United States v. Allen,* 787 F.2d 933, 936 (4th Cir. 1986), vacated on other grounds, 479 U.S. 1077 (1987).  Here, all three witnesses who recognized Lenoir on the video had a greater familiarity with him than the jury—a fact that Lenoir not only failed to dispute, but arguably bolstered at trial.

 Catchings, for instance, testified that he recognized Lenoir based on his surveillance of him during the investigation.  In response, Lenoir testified that the two were actually distantly related and had been around each other at family gatherings, suggesting a greater level of familiarity than Catchings had acknowledged.

The jury also heard from Willie Butler and Greta Mathis.  Butler testified that he recognized Lenoir because he had dated his niece, Kendra Butler, and that he had seen Lenoir weekly for the last two years.  Lenoir did not refute either assertion at trial.  On the contrary, Lenoir responded that Kendra Butler was his fiancée, and testified that he had been to Willie Butler's restaurant and home a "number of times."  Lenoir also admitted that he knew Greta Mathis, Willie Butler's niece and Kendra Butler's first cousin.  Mathis testified that she recognized Lenoir as the unmasked man on the video because of the way he walked.  Lenoir acknowledged, in turn, that he had been around Mathis "quite a few times."

Though much emphasis was placed on these identification witnesses' perceptions of how Lenoir walked, Butler also testified that he recognized Lenoir's face in the video. While the defense did not let their testimonies go unchallenged, highlighting their potential biases and the quality of the video on cross examination, all three testified that they recognized Lenoir as the unmasked man. The verdict reflects that the jury accepted their testimonies and rejected the defense's attempts to discredit them.

The Mississippi Supreme Court concluded that a reasonable juror could find Lenoir guilty beyond a reasonable doubt based on the admissible lay identification testimony of these witnesses. The undersigned has carefully reviewed the record and finds no fault with the state court's determination in the context of federal due process protections. Absent any grounds to support a due-process violation, Lenoir has failed to present a cognizable basis for federal *habeas corpus* relief in ground one. Even assuming that Lenoir has stated a cognizable claim for relief, he has not shown that the state court's determination concerning the admission of the identification evidence was contrary to or an unreasonable application of clearly established federal law. *Wilson v. Cain*, 641 F.3d 96, 100 (5th Cir. 2011) ("Because only Supreme Court jurisprudence provides 'clearly established Federal law' under section 2254(d), where Supreme Court jurisprudence 'gives no clear answer to the question presented, let alone one in petitioner's favor, it cannot be said that the state court unreasonably applied

clearly established federal law.'") (quoting *Wright v. Van Patten,* 552 U.S. 120, 128 (2008).

## Ground Two:  Sufficiency of the Evidence

In ground two, Lenoir challenges the sufficiency of the evidence, which was raised *sua sponte* by the dissent on direct appeal and addressed by the majority in response.  In support, the dissent reiterated the same arguments that were used to challenge the lay opinion testimony in ground one— that "given the facts in this case, those opinions, standing alone, are insufficient to lead any reasonable juror to conclude beyond a reasonable doubt that Lenoir committed the crime."  *Lenoir*, 222 So.3d 273, 283. Because a sufficiency-of-the-evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was contrary to, or involved an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).  The undersigned submits that Lenoir has made no such showing here.

A sufficiency-of-the-evidence claim is based upon federal due process principles, requiring the State to prove each element of the offense beyond a reasonable doubt.  The only relevant question in assessing the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  *Jackson* requires us to look to state law for the substantive elements of the offense, but "the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law."

11

*Coleman v. Johnson*, 566 U.S. 650 (2012) (internal quotation marks omitted). *Jackson* claims also "face a high bar in federal proceedings because they are subject to two layers of judicial deference." *Id.* at 651. In the first layer, a state appeals court reviewing the sufficiency of the evidence sets aside the jury's verdict "only if no rational trier of fact could have agreed with the jury." *Id.* In the second layer, a federal court grants habeas relief only upon a finding that the state court's rejection of a sufficiency of the evidence claim was "objectively unreasonable." *Id.* Under *Jackson's* sufficiency-of-the-evidence standard, juries have broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that they "draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

Viewing the evidence in the light most favorable to the State in this case, the Mississippi Supreme Court concluded that the jury heard sufficient evidence from which it could rationally infer that Lenoir committed armed robbery beyond a reasonable doubt. In response to the arguments raised by the dissent and echoed by Lenoir here, the court explained:

> When this Court reviews the sufficiency of evidence supporting a guilty verdict, we view the evidence in the light most favorable to the State and decide if rational jurors could have found the State proved each element of the crime. We are not required to decide—***and in fact we must refrain from deciding***—whether ***we think*** the State proved the elements. Rather, we must decide whether a reasonable juror could rationally say that the State did.
>
> Here, the dissent finds, on plain-error review, that the sufficiency-of-the-evidence test was not met. But in doing so, the dissent does not ***refrain*** from deciding whether it thinks the State proved its case beyond a reasonable doubt. Instead, the dissent actively reevaluates the sufficiency, weight, and credibility of the evidence anew—even going so far as to

>discredit any reliance by the jury on Catchings's, Butler's, and Mathis's identifications based on the dissent's personal take on the video.
>
>. . .
>
>This is contrary to our standard of review. Appellate judges simply may not ask whether *we think* Lenoir was proven guilty beyond a reasonable doubt. Nor may we consider the evidence in the light least favorable to the State. Instead, precedent mandates we view the evidence ***in the light most favorable to the State*** and ask whether a fair-minded, rational juror could find the State proved its case beyond a reasonable doubt.
>
>In other words, we are without authority to review the surveillance video and ask ourselves whether *we think* Catchings's, Butler's, and Mathis's identifications of Lenoir were credible in light of the video quality and physical characteristics of the robbers. This is because the jury is the sole judge of the credibility of witnesses and the weight and worth of their testimony. And here, the jury heard admissible testimony from three witnesses that Lenoir was one of the men in the video robbing the Dollar General employees at gunpoint. The jury also watched the video themselves. Though Thomas testified the video was too blurry for him to identify anyone, it was the jury's job *exclusively* to determine the weight and credibility of the identification testimony.
>
>Again, by finding Lenoir guilty, the jury obviously found Catchings's, Butler's, and Mathis's identifications to be credible. We have been crystal clear that "[a] jury's resolution of such factual determinations must be respected where, after reviewing all the evidence ***in the light most consistent with the jury's finding***, we conclude there was sufficient evidence to support the finding." Here, viewing the evidence in the light most consistent with the guilty verdict—and not adverse to it—there is sufficient evidence to support the jury's guilty verdict.

*Lenoir*, 222 So. 3d at 279 (internal citations and quotation marks omitted) (emphasis in original). Though not cited in its analysis, the Mississippi Supreme Court's resolution of this issue was neither contrary to, nor an unreasonable application of *Jackson*. In assessing sufficiency-of-the-evidence claims, courts do not "focus on whether the trier of fact made the ***correct*** guilt or innocence determination, but rather whether it made a

*rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390 402 (1993) (emphasis in original). The jury makes this determination based on all the evidence before it.

      Here, as the state court noted, in addition to Butler, Mathis, and Catchings, the jury heard from Jeffrey Thomas. Lenoir and Thomas not only went to the same church, but Thomas had also been to Lenoir's home. Prior to trial, Thomas was interviewed by Detective John Whitaker. During the interview, he identified Lenoir both in a photo lineup and as the individual who appeared in the doorway without a mask on the video. However, Thomas later testified at trial that he felt pressured by Whitaker to identify Lenoir, and claimed the video was too "blurry" for him to make an identification. The jury was able to weigh Thomas's testimony in this regard against his admissions on cross-examination that he had worked with Kendra Butler at the Dollar General location in Wesson, Mississippi. Lenoir, himself, testified that Butler and Thomas were "close friends." In weighing the evidence, the jury could have reasonably inferred that Thomas recanted his initial identification because of his friendships with Lenoir and/or his fiancée.

      The same can also be said for defense witness, Jessica Odom. At trial, Odom testified that she too felt pressured by Whitaker to identify Lenoir as the unmasked man in the video. Odom was the assistant manager of the Dollar General in Wesson, Mississippi, and testified that on the night of the robbery, the Brookhaven manager requested that she travel to that location to make a copy of the surveillance video for the police. On direct examination, Odom testified that she knew Lenoir and his fiancée

because the fiancée shopped at the Dollar General in Wesson. But upon further questioning on cross-examination, Odom admitted that she too had worked with Kendra Butler at the Wesson store. She also acknowledged that she had repeatedly refused to give a statement when approached by Whitaker, telling him at one point: "I'm not writing a statement, I'm not signing nothing and I'm not testifying against nobody." Like Thomas, Odom testified that she could not identify anyone on the video. She also asserted that the unmasked man who wielded the gun was a "little short guy." This assessment contradicted the observations of both Brookhaven employees who asserted the unmasked man was tall. In assessing the credibility of witnesses at trial, the jury could have reasonably inferred that Odom's testimony and her refusal to cooperate were influenced by her relationship with Lenoir's fiancée.

The jury was also given an opportunity to see the surveillance video of the robbery, including the first few seconds in which the unmasked assailant had yet to put the mask on. The jury could see the quality of the videotape and presumably judge the credibility of both the prosecution and defense witnesses' assertions about the video. That the jury found the prosecution's witnesses more credible than defense witnesses is beyond the scope of federal review. *Schlup v. Delo,* 513 U.S. 298, 330 (1995) ("under *Jackson,* assessment of credibility of witnesses is generally beyond scope of review"). Conflicts in evidence were for the jury to resolve, and we must "respect the ability of the fact-finder to evaluate the credibility of the witnesses." *Knox v. Butler*, 884 F.2d 849, 851 (5th Cir. 1989). Lenoir offers nothing to overcome the deference we must

15

afford to the Mississippi Supreme Court's findings that the sufficiency of the evidence supports a conviction in this case. Accordingly, no relief is warranted on this claim.

As a final matter, Lenoir appears to include a request for an evidentiary hearing in his prayer for relief. However, his claims were decided on the merits in state court. Federal habeas review under the § 2254(d)(1) standard applicable to claims decided on the merits is limited to the state court record. *Cullen v. Pinholster,* 563 U.S. 170 (2011). Also, Lenoir has not shown that his claims fall within the narrow restrictions of 28 U.S.C. § 2254(e)(2).[5] Accordingly, his request for an evidentiary hearing should be denied.

For these reasons, it is the recommendation of the undersigned United States Magistrate Judge that this habeas petition should be dismissed with prejudice. The undersigned further recommends that Petitioner's request for an evidentiary hearing be denied.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi*, any party may, within 14 days after being served with a copy of this Report and Recommendation, serve and file written objections. Within 7 days of the service of the objection, the opposing party must either

---

[5] Lenoir does not rely on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable. Nor has he shown the existence of a factual predicate that could not have been previously discovered through the exercise of due diligence. *See* 28 U.S.C. § 2254(e)(2). He has also failed to show that the facts underlying his claims would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty of the underlying offense. *See id.*

serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted on July 5, 2021.

s/ LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE
